AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

NOV 2 5 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. **19MJ5268** |
| Black and Grey Moto Smartphone cellular phone Seized as FP&F No. 2020565800002701 ("Target Device") | ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Bringing in Illegal Aliens Without Presentation(a)(2)(B)(iii) |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____11/25/2019_____

_____
*Judge's signature*

City and state: San Diego, California

The Honorable Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

### INTRODUCTION

1.    I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Black and Grey Moto Smartphone cellular phone
> Seized as FP&F No. 2020565800002701
> (**"Target Device"**)

the **"Target Device(s)"**, as further described in Attachment(s) A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant(s) relate(s) to the investigation and prosecution of Nelson Cruz AUDELO-Macareno for smuggling illegal aliens from Mexico into the United States. The **Target Device(s)** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant(s) and does not purport to set forth all of my knowledge of the investigation into this matter.   Dates and times are approximate.

### TRAINING AND EXPERIENCE

4.    I have been employed by the USBP since 2008, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years.   I am

1

authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.     During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

1 operations, and communicating with co-conspirators who guide aliens, coordinate drop off
2 locations, and/or operate alien stash houses.

3      8.    The smuggling of aliens generates many types of evidence, including, but not
4 limited to, cellular phone-related evidence such as voicemail messages referring to the
5 arrangements of travel, names, photographs, text messaging (via SMS or other
6 applications), and phone numbers of co-conspirators and illegal aliens.  For example,
7 drivers and passengers responsible for transporting illegal aliens are typically in telephonic
8 contact with co-conspirators immediately prior to and/or following the crossing of the
9 illegal aliens at the border, at which time they receive instructions, including where to pick-
10 up the illegal aliens for transportation into the United States and where to take the illegal
11 aliens after crossing into the United States.  These communications may also include
12 locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in
13 telephonic contact with co-conspirators prior to and following their crossing in order to
14 make smuggling arrangements, receive instructions, and report their locations after
15 crossing.

16      9.    Based upon my training, experience, and consultations with law enforcement
17 officers experienced in narcotics trafficking investigations, and all the facts and opinions
18 set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity
19 Module (SIM) card(s)) can and often do contain electronic evidence, including, for example,
20 phone logs and contacts, voice and text communications, and data, such as emails, text
21 messages, chats and chat logs from various third-party applications, photographs, audio
22 files, videos, and location data.  In particular, in my experience and consultation with law
23 enforcement officers experienced in alien smuggling investigations, I am aware that
24 individuals engaged in alien smuggling may store photos and videos on their cell phones
25 that reflect or show co-conspirators and associates engaged in alien smuggling, as well as
26 images and videos with geo-location data identifying alien smuggling transportation routes,
27 and communications to and from recruiters and organizers.

28

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On November 23, 2019, Border Patrol Agent H. Miller, who was wearing a full rough duty uniform, was conducting assigned duties in Imperial Beach Border Patrol Station's area of responsibility. At approximately 9:34 PM, the Joint Harbor Operations Command (JHOC) operator notified, via service radio, that a Personal Water Craft (PWC) with two individuals on board, was north bound from Mexican waters heading towards U.S. territory waters. JHOC advised that a single individual was dropped off on the beach. Agent Miller responded to the area and encountered a single individual, later identified as material witness, Jose Concepcion CORRAL-Ventura, lying face down wearing a bright orange floatation device. Agent Miller instructed CORRAL to approach her location because there

4

1  was a tall fence in between them. CORRAL climbed the fence and Agent Miller conducted
2  an immigration inspection. CORRAL stated he is a citizen of Mexico without documents
3  that would allow him to enter or remain in the United States legally. At approximately 9:55
4  PM, Agent Miller placed CORRAL, under arrest.

5      12.    JHOC continued observation of the PWC attempting to return back to Mexico
6  where it appeared the PWC was having engine problems as it kept stopping abruptly in the
7  middle of the ocean. JHOC notified that the PWC had made several stops along its way
8  back to Mexico. At approximately 10:13 PM, JHOC notified that they had temporarily lost
9  visual of the PWC as it made its way south to an area known to Border Patrol Agents as the
10  "River Mouth."

11     13.    At approximately 10:30 PM, United States Coast Guard (USCG) Station San
12  Diego was launched to respond to a report of a disabled PWC. USCG responded to the area
13  and encountered the PWC. U.S. Coast Guard Petty Officer Third Class S. Wheeless secured
14  the individual, towed the PWC, and headed back to San Diego Bay.

15     14.    Border Patrol Agent S. Lebron was conducting assigned duties in the Imperial
16  Border Patrol Station's area of responsibility. At approximately 12:06 AM, Agent Lebron
17  responded to the U.S. Coast Guard request for an immigration inspection. Upon arrival,
18  Agent Lebron was notified by Petty Officer S. Wheeless that he had encountered the
19  individual in the water onboard a broken down PWC. The encounter is approximately one
20  and a half miles west of as the "River Mouth" and approximately one mile north of the
21  United States / Mexico International Boundary. Agent Lebron approached the individual,
22  identified himself as a Border Patrol agent, and conducted an immigration inspection. The
23  individual, later identified as the defendant Nelson Cruz AUDELO-Macareno, stated to
24  being a citizen of Mexico without documents that would allow him to enter or remain in the
25  United States legally. At approximately 1:05 AM, Agent Lebron placed AUDELO, under
26  arrest. AUDELO was in possession of a cell phone (**Target Device(s)**) at the time of arrest.

27
28

5

1    15.    Nelson Cruz AUDELO-Macareno was read and understood his Miranda
2  Rights.  AUDELO stated that he was willing to answer questions without an attorney
3  present.  AUDELO admitted that he was going to get paid $1,000 USD for smuggling an
4  individual on a Jet Ski on today's event.  AUDELO stated that the owner of the Jet Ski, was
5  the person that organized the event.  AUDELO stated that he was instructed to transport an
6  individual into the United States and drop him off just north of the Imperial Beach Pier in
7  San Diego, California.  AUDELO stated that while making his way back south after
8  dropping off the individual, the Jet Ski stopped working and he could not make it back into
9  Mexico.

10    16.    Material witnesses CORRAL, stated he is a citizen of a country other than the
11  United States and do not have any immigration documents which would allow him to enter
12  or remain in the United States legally.  CORRAL, stated they were going to pay
13  approximately $15,000 USD to be smuggled into the United States.  CORRAL was
14  presented a photographic line-up and was not able to positively identify the driver of the Jet
15  Ski.  Nelson Cruz AUDELO-Macareno's phone **(Target Device(s))** was subsequently
16  seized.

17    17.    In my training and experience, alien smugglers and transporters may be
18  involved in the planning and coordination of alien smuggling event in the days and weeks
19  prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will
20  continue to attempt to communicate with a defendant after their arrest to determine the
21  whereabouts of the aliens. Accordingly, I request permission to search the **Target Device(s)**
22  for data beginning from **October 24, 2019 through November 24, 2019**, which was the
23  day following the arrest.

24
25    **METHODOLOGY**

26    18.    It is not possible to determine, merely by knowing the cellular telephone's
27  make, model and serial number, the nature and types of services to which the device is
28  subscribed and the nature of the data stored on the device. Cellular devices today can be

6

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21.    Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent.  Consent was not given.

## CONCLUSION

22.    Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device(s)** will yield evidence of alien smuggling violations of Title 8, United States Code, Sections 1324.

23.    Because the **Target Device(s)** was seized at the time of (AUDELO'S) arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device(s)**. As stated above, I believe that the appropriate date range for this search is from **October 24, 2019 through November 24, 2019**.

24.    Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment(s) A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Subscribed and sworn to before me this ___25th___ day of November, 2019.

Hon. Jill L. Burkhardt
United States Magistrate Judge

8

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black and Grey Moto Smartphone cellular phone
> Seized as FP&F No. 2020565800002701
> (**"Target Device"**)

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone(s) described in Attachment(s) A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone(s) for evidence described below. The seizure and search of the cellular telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 24, 2019 through November 24, 2019:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.